### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MI PUEBLO LATIN MARKET, INC. | ) | Case No. 15-11349 HRT |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| JAIME ANTONIO CUEVA | ) | Case No. 15-11350 HRT |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| DANEEN JANETTE CUEVA | ) | Case No. 15-15169 HRT |
| | ) | |
| Debtor. | ) | **JOINTLY ADMINISTERED UNDER CASE NO. 15-11349** |
| | ) | |

### JOINT CONSOLIDATED PLAN OF REORGANIZATION PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Dated as of October 7, 2015

| | |
|---|---|
| **LAUFER AND PADJEN LLC**<br>Robert Padjen (#14678)<br>5290 DTC Parkway, Suite 150<br>Englewood, Colorado 80111<br>(303) 830-3173 (main)<br>(303) 850-7115 (facsimile)<br>rp@jlrplaw.com<br><br>*Counsel to Debtor Mi Pueblo Latin Market, Inc.* | **GOLDSTEIN & MCCLINTOCK LLLP**<br>Thomas R. Fawkes<br>Brian J. Jackiw<br>208 South LaSalle Street, Suite 1750<br>Chicago, Illinois 60604<br>(312) 337-7700 (main)<br>(312) 277-2305 (facsimile)<br>tomf@goldmclaw.com<br>brianj@goldmclaw.com<br><br>*Counsel to The Official Committee of Unsecured Creditors* |
| **PADILLA & PADILLA, PLLC**<br>Joaquin G. Padilla<br>1753 Lafayette Street | |

| Denver, Colorado 80218<br>(303) 832-7145 (main)<br>(303) 832-7147 (facsimile)<br>Joaquin@padillalawoffices.com<br><br>*Counsel to Jaime Antonio Cueva and Daneen Janette Cueva* | |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

Article I. Definitions, Rules of Interpretation, Computation of Time and Governing Law ........... 1
    A.    Rules of Interpretation, Computation of Time and Governing Law ................... 1
    B.    Defined Terms................................................................................... 2

Article II. Unclassified Claims .............................................................................. 8
    A.    Administrative Claims.................................................................... 8
    B.    Priority Tax Claims ...................................................................... 9

Article III. Classification and Treatment of Classified Claims and Equity Interests.................... 9
    A.    Summary .................................................................................... 9
    B.    Treatment of Claims and Equity Interests ......................................... 10

Article IV. Treatment of Disputed Claims .............................................................. 14
    A.    Objections to Claims; Prosecution of Disputed Claims ....................... 14
    B.    Estimation of Claims .................................................................. 14
    C.    Payments and Distributions on Disputed Claims ............................... 15

Article V. Distributions......................................................................................... 15
    A.    Method of Distributions .............................................................. 15
    B.    Means of Cash Payment .............................................................. 16
    C.    Delivery of Distributions ............................................................ 16
    D.    Undeliverable Distributions ........................................................ 16
    E.    Completion of Distributions ........................................................ 17
    F.    Withholding and Reporting Requirements........................................ 17
    G.    Tax Identification Numbers ......................................................... 17
    H.    Time Bar to Cash Payments ........................................................ 18
    I.    Interest .................................................................................... 18
    J.    Fractional Dollars; De Minimis Distributions................................... 18
    K.    Set-Offs .................................................................................. 18
    L.    Settlement of Claims and Controversies ......................................... 18

Article VI. Implementation of The Plan ................................................................. 19
    A.    Corporate Action ...................................................................... 19
    B.    Post-Confirmation Management .................................................... 19
    C.    Cancellation of Notes, Instruments, Debentures and Equity Interests.............. 20
    D.    Future Equity Disposition ........................................................... 20
    E.    Stock Pledge ............................................................................ 20
    F.    Prosecution and Tolling of Causes of Action.................................... 20
    G.    Periodic Plan Updates ...................................**Error! Bookmark not defined.**
    H.    Term of the Plan ....................................................................... 21
    I.    Option Rights of the Cuevas to Retain Equity Interests Under Specific
Conditions ........................................................................................... 21
    J.    Distributions of Sale Proceeds ..................................................... 22

K.      Insurance Preservation ................................................................................ 22
L.      Opportunity to Submit Competing Bids ...................................................... 22

Article VII. Creditor Trust ................................................................................................ 23

Article VIII. Executory Contracts and Unexpired Leases ................................................ 23

Article IX. Preservation of Rights ................................................................................... 23

Article X. Conditions Precedent to Confirmation and the Effective Date ....................... 25
A.      Conditions Precedent to the Effective Date of the Plan ............................... 25
B.      The Confirmation Order ............................................................................... 25

Article XI. Effect of Plan Confirmation .......................................................................... 25
A.      Discharge ...................................................................................................... 25
B.      Termination of Subordination Rights and Settlement of Related Claims ........... 25
C.      Injunction ..................................................................................................... 26
D.      Terms of Existing Injunctions or Stays ....................................................... 26
E.      Exculpation .................................................................................................. 26
F.      Releases ........................................................................................................ 27

Article XII. Miscellaneous ............................................................................................... 28
A.      Payment of Statutory Fees ........................................................................... 28
B.      Business Day ................................................................................................ 28
C.      Severability .................................................................................................. 28
D.      Conflicts ....................................................................................................... 28
E.      Further Assurances ...................................................................................... 29
F.      Notices .......................................................................................................... 29
G.      Filing of Additional Documents .................................................................. 29
H.      Successors and Assigns ............................................................................... 29
I.      Closing of Case ............................................................................................ 30
J.      Section Headings ......................................................................................... 30
K.      Further Information ...................................................................................... 30

Article XIII. Retention of Jurisdiction ............................................................................. 30

Article XIV. Modification, Revocation, or Withdrawal of the Plan ................................. 31
A.      Modification of Plan ..................................................................................... 31
B.      Revocation, Withdrawal, or Non-Consummation ........................................ 32

## INTRODUCTION

Mi Pueblo Latin Market, Inc. ("*Mi Pueblo*"), Jaime Antonio Cueva and Daneen Cueva, each debtors and debtors-in-possession in the above-captioned Chapter 11 Cases (collectively, the "*Debtors*") and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "*Committee*"), hereby propose this Joint Consolidated Chapter 11 Plan of Reorganization (the "*Plan*" and further defined in Article I.B) pursuant to section 1121(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

All Holders of Claims and Equity Interests are encouraged to consult the Disclosure Statement before voting to accept or reject the Plan.  Among other information, the Disclosure Statement contains discussions of the Debtors, the historical background of the Chapter 11 Cases and the prepetition period, and a summary and analysis of the Plan.  No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Bankruptcy Court has scheduled the hearing for approval of the Plan on [_____] __, 2015 at __:__ _.m. (MST).

## ARTICLE I.
## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

### A.    RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

1.    For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    Except as otherwise specifically provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.    Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or

document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Colorado, without giving effect to the principles of conflict of laws thereof, and as modified by federal bankruptcy law.

**B.      DEFINED TERMS**

Unless the context otherwise requires, the following terms shall have the meanings ascribed to them below when used in capitalized form herein:

1.      *Administrative Claim* means (a) Professional Fee Claims; and (b) Other Administrative Claims.

2.      *Administrative Claims Bar Date* shall mean the thirty (30) days after the Confirmation Date or such later date as either (a) the Court may establish, or (b) the Debtor may set in its reasonable discretion by filing an ECF notice on the docket in the Chapter 11 Case extending such Administrative Claims Bar Date by a minimum of fifteen (15) days.

3.      *Allowed* means, with respect to any Claim, except as otherwise provided herein, any of the following:  (a) a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated and as to which (i) the Debtors or any other party in interest has not filed an objection or (ii) no contrary proof of Claim has been filed; (b) a Claim that either is not a Disputed Claim or has been Allowed by a Final Order; (c) a Claim that is Allowed: (i) in any stipulation with the Debtor of the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court; (ii) in any stipulation with the Debtors of the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court; or (iii) in any contract, instrument, indenture or other agreement entered into or assumed in connection with the Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (e) a Claim that is Allowed pursuant to the terms of the Plan.

4.      *Available Cash* means all of the Cash of Reorganized Mi Pueblo in the Distribution Account.

5.      *Avoidance Actions* means all claims and any avoidance, recovery, subordination or other actions against any Entity arising under the Bankruptcy Code, including sections 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or otherwise.

6.      *Ballot* means each of the ballot forms distributed to each Holder of an Impaired Claim in which the Holder is to indicate acceptance or rejection of the Plan.

7.      *Bank Debt* means the current debt owed by Mi Pueblo to the Lender pursuant to the Revolving Note and the Credit Card Agreement.

8.      *Bankruptcy Code* means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as now in effect or as hereafter amended.

9.      *Bankruptcy Court* means the United States Bankruptcy Court for the District of Colorado.

10.     *Bankruptcy Rules* means, as the context requires, the Federal Rules of Bankruptcy Procedure applicable to these Chapter 11 Cases and/or the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

11.     *Bar Date* means the deadlines for filing proofs of claim for any Claim, including Section 503(b)(9) Claims, set pursuant to order of the Bankruptcy Court at June 24, 2015 for non-governmental units and November 3, 2015 for governmental units.

12.     *Business Day* means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

13.     *Cash* means legal tender of the United States of America or equivalents thereof.

14.     *Cash Sweep* shall mean a recurring withdrawal from Reorganized Mi Pueblo's bank accounts of all cash in excess of the Operating Cushion, to occur within fourteen (14) days after the end of each full calendar quarter following the Effective Date (or on a more frequent basis as determined by the Creditor Trustee in his reasonable discretion and in consultation with the CEO), the proceeds of which shall be deposited into the Distribution Account.

15.     *Causes of Action* means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third- party claims, counterclaims, and crossclaims (including, but not limited to, the Avoidance Actions) of the Debtors that are or may be pending on the Effective Date or instituted by Reorganized Mi Pueblo after the Effective Date against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the Effective Date.

16.     *Chapter 11 Cases* means the above-captioned cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on the Petition Dates currently pending before the Bankruptcy Court and designated Case Nos. 15-11349, 15-11350, and 15-15169.

17.     *Claim* has the same meaning as that term is defined in section 101(5) of the Bankruptcy Code.

18.     *Class* means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

19.     *Committee* means the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases.

20.     *Confirmation* means the entry of the Confirmation Order, subject to all conditions specified in Article IX.B herein having been satisfied

21.     *Confirmation Date* means the date upon which the Confirmation Order is entered on the docket of the Bankruptcy Court.

3

22.     *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as the same may be adjourned from time to time.

23.     *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

24.     *Consummation* means the occurrence of the Effective Date.

25.     *Creditor* means the Holder of a Claim arising prepetition or pre-confirmation.

26.     *Creditor Trust* means that certain trust established pursuant to this Plan and the Creditor Trust Agreement on the Effective Date to facilitate and secure the repayment of the Administrative Claims and General Unsecured Claims of Mi Pueblo.

27.     *Creditor Trust Agreement* means that certain agreement to be executed by the Creditor Trustee and Reorganized Mi Pueblo on the Effective Date which will, without limitation, establish and describe the operation of the Creditor Trust.

28.     *Creditor Trust Expenses* shall have the meaning ascribed to such term in the Creditor Trust Agreement.

29.     *Creditor Trustee* means the trustee appointed to administer the Creditor Trust and its assets, and make distributions to creditors, initially [NAME].

30.     *Cuevas* shall mean, collectively, Debtors Jaime Antonio Cueva and Daneen Janette Cueva.

31.     *Debtors* means the debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code and as defined in the introductory paragraph of the Plan. When implied by the context, "Debtor" refers to Reorganized Mi Pueblo. When used in Article XI, "Debtors" refers to the Debtors, Reorganized Mi Pueblo and the Creditor Trust.

32.     *Disclosure Statement* means the disclosure statement for the Plan approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017 (including all schedules and exhibits thereto), as such disclosure statement may be amended or modified from time to time.

33.     *Disputed Claims* means a Claim, or any portion thereof which is:  (i) listed on the Schedules as unliquidated, disputed or contingent; (ii) the subject of an objection or request for estimation filed or is otherwise disputed by the Debtors or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (iii) in excess of the amount scheduled as other than disputed, contingent or unliquidated, or (iv) otherwise disputed by the Debtors, the Committee or the Creditor Trustee in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by a Final Order.

34.     *Distribution* means any consideration given to any Entity by the Debtors under the Plan.

4

35.    *Distribution Account* means a bank account to be established by Reorganized Mi Pueblo following the Confirmation Date, which Distribution Account shall be set up in a manner that is acceptable to the Creditor Trustee and that, among other things, ensures that the Creditor Trustee's approval will be required for withdrawals or payments from the account.

36.    *Effective Date* means the date selected by the Debtors which is a Business Day after the Confirmation Date on which all conditions specified in Article X.A herein have been satisfied, and no stay of the Confirmation Order is in effect.  When used in the Plan, Effective Date means on the Effective Date or as soon as reasonably practicable thereafter.

37.    *Entity* means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, the United States Trustee or any other entity.

38.    *Equity Interests* means the shares or interests representing ownership of Mi Pueblo or Reorganized Mi Pueblo, whether or not denominated "stock."

39.    *Estates* means the Estates of the Debtors in the Chapter 11 Cases created pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Cases.

40.    *Estate Representative* means the Creditor Trustee, acting in its capacity as the estate representative pursuant to Section 1123(b)(2)(B) of the Bankruptcy Code.

41.    *Final Decree* means the decree contemplated under Bankruptcy Rule 3022.

42.    *Final Order* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, with respect to the subject matter, that has not been reversed, stayed, modified or amended, and is no longer subject to appeal, *certiorari* proceeding or other proceeding for review, re-argument, or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review, re-argument, or rehearing has been timely requested or is then pending and the time to file any such appeal, *certiorari* proceeding or other proceeding for review, re-argument, or rehearing has expired or as to which any right to appeal, petition for *certiorari*, reargue, or seek rehearing shall have been waived in writing in form and substance satisfactory to the Debtors.

43.    *Forfeited Unsecured Distributions* means undeliverable or unclaimed Distributions relating to Allowed Unsecured Claims, that are deemed forfeited pursuant to Article V.D.2 of the Plan.

44.    *General Unsecured Claims* means any unsecured Claims against the Debtors' Estates, other than Administrative Claims and Priority Claims.

45.    *Guaranties* means personal guaranties of Jaime or Daneen Cueva of the obligations of Mi Pueblo to certain of Mi Pueblo's trade creditors.

46.    *Holder* means any Entity owning or holding a Claim.

47.    *Impaired* has the meaning given in section 1124 of the Bankruptcy Code.

48.     *Insider Claims* means any Causes of Action or potential Causes of Action held by Mi Pueblo, its Estate or the Creditor Trustee against the Insiders of the Debtor (i.e., Jaime and Daneen Cueva).

49.     *Lender* means J.P. Morgan Chase Bank, N.A. and its successors and assigns.

50.     *Lender Secured Claims* means the secured claims of the Lender pursuant to the Prepetition Notes.

51.     *Lien* means any charge against or interest in property to secure payment of a debt or performance of an obligation.

52.     *Litigation Proceeds* means any net proceeds received by Reorganized Mi Pueblo on account of or in connection with the Causes of Action (whether via prosecution, settlement, sale, or otherwise), which Litigation Proceeds shall be automatically deposited into the Distribution Account as soon as practicable following receipt thereof by Reorganized Mi Pueblo.

53.     *New Note* means that replacement note to be entered into between Reorganized Mi Pueblo and the Lender, according to the terms set forth in this Plan.

54.     *New Security Agreement* means that replacement security agreement to be entered into between Reorganized Mi Pueblo and the Lender pursuant to which Lender shall be granted liens consistent with those held by the Lender pre-petition on substantially all of Reorganized Mi Pueblo's assets (including, without limitation, on the proceeds of its collateral) to secure the obligations under the New Note.

55.     *Operating Cushion* means an amount of Available Cash equal to an amount not less than $100,000, which amount Reorganized Mi Pueblo must use its reasonable efforts to maintain at all times (other than in the context of a sale of Reorganized Mi Pueblo's assets or a liquidation, if approved by the Creditor Trustee) until Mi Pueblo's repayment obligations under the Plan have been fully satisfied.

56.     *Other Administrative Claims* means Claims, other than Professional Fee Claims, for costs and expenses of administration of the Chapter 11 Case Allowed under section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code incurred after the Petition Date, including, but not limited to:  (a) any actual and necessary costs and expenses of preserving the Debtor's Estate and operating the businesses of the Debtor (such as wages, salaries, and payments for inventories, leased equipment and premises); (b) all fees and charges assessed against the Debtor's Estate under 28 U.S.C. § 1930; and (c) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

57.     *Person* means a "person" as defined in section 101(41) of the Bankruptcy Code.

58.     *Petition Dates* means the date on which the Debtors filed its petition for relief commencing the Chapter 11 Cases, February 14, 2015 (for Mi Pueblo and Jaime Cueva) and May 12, 2015 (for Daneen Cueva).

6

59.    *Plan* means this Joint Consolidated Chapter 11 Plan of Reorganization, including, without limitation, any exhibits, supplements, appendices and schedules hereto, either in its present form or as it may be amended, modified, altered or supplemented from time to time in accordance with the terms and provisions hereof.

60.    *Prepetition Notes* means each of the promissory notes issued by Mi Pueblo to the Lender prior to the Petition Date, including:  (1) promissory note in the original principal amount of $500,000, dated October 20, 2011 and maturing on October 20, 2018; (2) promissory note in the original principal amount of $1,050,000, dated February 3, 2010 and maturing on February 3, 2030; (3) promissory note in the original principal amount of $92,449.86, dated June 28, 2013 and maturing on July 1, 2016; (4) promissory note in the original principal amount of $495,000, dated October 20, 2010 and maturing on October 20, 2020; (5) promissory note in the original principal amount of $770,300, dated October 24, 2012 and maturing on May 1, 2020; and (6) promissory note and line of credit in the original principal amount of 150,000, dated February 4, 2011 and maturing on February 4, 2014.

61.    *Priority Claim* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

62.    *Priority Tax Claim* means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

63.    *Professional* means any person or other Entity that has been retained in the Chapter 11 Cases by a Final Order of the Bankruptcy Court pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code or otherwise, potentially including, but not limited to, Laufer and Padjen LLC; Goldstein & McClintock LLLP; O'Keefe & Associates Consulting, LLC; and Padilla & Padilla, PLLC, or (b) seeks compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

64.    *Professional Fee Claims* means Claims of Professionals for compensation for legal, consulting, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 330, 331, or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date.

65.    *Proponents* means the Debtors and the Committee.

66.    *Pro Rata* means proportionately so that with respect to an Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of a particular Allowed Claim to (ii) the amount of that particular Allowed Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to (ii) the amount of all Allowed Claims in that Class.

67.    *Rejection Claims Bar Date* means thirty (30) days after Confirmation Date.  All parties affected by Article VII of the Plan shall file a proof of claim within that time period.

68.    *Released Parties* means any Entity granted a release by the Debtors in Article XI.F. of the Plan.

69.    *Releases* means the releases described in Article XI.F of the Plan.

7

70.    *Reorganized Mi Pueblo* means Mi Pueblo, on and after the Effective Date.

71.    *Schedules* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended.

72.    *Secured Claim* means:  (a) a Claim (other than a Claim in any way arising from or relating to a Claim of a lessor for damages resulting from the termination of a lease of real property) that is secured by a Lien on a property in which the Estates have an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) a Claim Allowed under the Plan as a Secured Claim.

73.    *Stock Pledge* means that certain collateral assignment by Jaime and Daneen Cueva of their ownership interest in Mi Pueblo to the Creditor Trust as more fully described in Article VI.E of the Plan.

74.    *Term of the Plan* has the meaning ascribed to that phrase in Article VI.G. of the Plan.

75.    *Unimpaired*, when used with reference to a Claim, means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

76.    *Unsecured Claim* means any Claim against the Debtors other than an Administrative Claim, a Priority Tax Claim, a Secured Claim or a Priority Claim.

**ARTICLE II.**
**UNCLASSIFIED CLAIMS**

**A.**    **ADMINISTRATIVE CLAIMS**

1.    *Treatment.*  Each Allowed Administrative Claim not paid prior to Confirmation shall be paid by Reorganized Mi Pueblo in full from Available Cash in such amounts as either (1) were incurred in the ordinary course of business prior to the Confirmation Date or (2) are Allowed on a final basis by the Bankruptcy Court.   If Allowed Administrative Claims need to be paid in installments due to an insufficient amount of Available Cash, the installments shall be paid on a Pro Rata basis from Available Cash, prior to the payment of Claims in Class 8, such that to the greatest extent practicable, all Holders of Allowed Administrative Claims receive payments on the same schedule and percentage.   The Allowed 503(b)(9) Claim of Harvest Meat Company shall be separately classified as a Class 7 Claim, and shall be satisfied as set forth in Article III.B.7.

2.    *Bar Dates.*

(a)    Pre-Confirmation Administrative Claims Bar Date and Pre-Confirmation Professional Fee Claims Bar Date. All Holders of Administrative Claims (excluding Holders of Section 503(b)(9) Claims and Holders of Professional Fee Claims) seeking allowance and payment

8

of such Claims must file a proof of claim with the Clerk of the Bankruptcy Court in a form substantially similar to Official Form No. 10 by no later than the Administrative Claims Bar Date. All Holders of Professional Fee Claims must file a final application for compensation for pre-confirmation fees and expenses and time and expenses incurred immediately post-confirmation pursuant to section 330 of the Bankruptcy Code by no later than the Administrative Claims Bar Date. Any Holder of an Administrative Claim, including a Professional Fee Claim, that does not submit its pre-Confirmation Claim in the manner prescribed in this Article II.A.2 of the Plan shall be barred from asserting such pre-confirmation Claim against the Debtor or its Estate, and shall be deemed to have waived any right to a Distribution from the Estate or the Creditor Trust with respect to that pre-Confirmation Claim. Deadlines for filing Administrative Claims, including pre-confirmation Professional Fee Claims, may be extended by the Court or by an ECF notice from the Debtor as provided in the definition of the Administrative Bar Date. To the extent practicable, Holders of Professional Fee Claims will include in their final applications for pre-Confirmation fees and expenses any fees and expenses incurred between the Confirmation Date and the Effective Date. From and after the Effective Date, Reorganized Mi Pueblo, acting through its CEO, will be able to hire and compensate Professionals, to the extent needed, without Bankruptcy Court approval.

**B.    PRIORITY TAX CLAIMS**

Prior to the Effective Date, all Priority Tax Claims for pre-petition taxes entitled to priority under 11 U.S.C. § 507(a)(8) shall receive on account of such Allowed Priority Tax Claims, regular installment Cash payments over a period not to exceed five years from the Petition Date, with a value, as of the Effective Date, equal to the Allowed amounts of such Claims. Payments of these Claims shall be made monthly in each month following the Effective Date, and interest on the unpaid portion of such Claims shall accrue at the statutory rate applicable to each Claim.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.    SUMMARY**

1.    The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and Distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified, but the treatment for such unclassified Claims is set forth in Article II.

2.    The classification of Claims against and Equity Interests in the Debtor pursuant to the Plan is as follows:

| Class | Claim | Status | Voting Right |
|-------|-------|--------|--------------|

| 1 | Lender Secured Claims | Impaired | Entitled to vote |
|---|---|---|---|
| 2 | Secured Claim of Adams County Treasurer | Impaired | Entitled to vote |
| 3 | Secured Claim of City and County of Denver | Impaired | Entitled to vote |
| 4 | Secured Claim of the State of Colorado | Impaired | Entitled to vote |
| 5 | Secured Claims Against Cuevas | Unimpaired | Deemed to accept Plan |
| 6 | Convenience Claims | Impaired | Entitled to Vote |
| 7 | 503(b)(9) Claim of Harvest Meat Company | Impaired | Entitled to vote |
| 8 | Mi Pueblo General Unsecured Claims | Impaired | Entitled to vote |
| 9 | Cueva General Unsecured Claims | Impaired | Entitled to vote |
| 10 | Guaranty Claims | Impaired | Entitled to vote |
| 11 | Equity Interests in Mi Pueblo | Impaired | Entitled to vote |

**B.**    **TREATMENT OF CLAIMS AND EQUITY INTERESTS**

1.    Class 1 – Lender Secured Claims

(a)    Classification:  Class 1 consists of all Lender Secured Claims.

(b)    Treatment:  On the Effective Date, Reorganized Mi Pueblo shall issue the New Notes to the Holder of the Lender Secured Claims.  There shall be six New Notes issued (one for each of the Prepetition Notes), with each of the New Notes in a principal amount equal to, for each corresponding Prepetition Note, the sum of (i) the principal balance of the Prepetition Note, (ii) reasonable fees and costs incurred in collection efforts with respect to that Prepetition Note and (iii) accrued non-default interest on the Prepetition Note as of the Effective Date (the parties will stipulate to the amount of the foregoing obligations in the New Notes).  The New Notes shall each bear interest at the 90-day LIBOR rate plus five percent (5.0%) per annum.  The New Notes shall each have a term of ten (10) years, with principal and interest repayments on the New Note commencing with the March, 2016 payment.  During the period from the Effective Date until the March, 2016 payment, the Holder shall only be entitled to monthly payments of interest. Reorganized Mi Pueblo's obligations under the New Notes shall be secured by the New Security Agreement.

(c)    Cancellation of Bank Debt:  Concurrently with the making of the New Notes, the Prepetition Notes shall be cancelled in their entirety, and Reorganized Mi Pueblo's sole obligations to the Lender shall be pursuant to the New Notes.

(d)    Voting:  Class 1 is Impaired.  The Holder of the Lender Secured Claims is entitled to vote to accept or reject the Plan.

2.    Class 2 – Secured Claim of Adams County Treasurer

(a)    Classification:  Class 2 consists of the Secured Claim of the Adams County Treasurer against Mi Pueblo.

(b)     Treatment:  The holder of the Class 2 Allowed Secured Claim shall receive, on account of such Claim, regular installment Cash payments from Reorganized Mi Pueblo over a period not to exceed five years from the Petition Date, with a value, as of the Effective Date, equal to the allowed amount of such Claim.  Payments of this Claim shall be made monthly in each month following the Effective Date, and interest on the unpaid portion of the Claim shall accrue at the statutory rate applicable to such Claim.

(c)     Voting:  Class 2 is Impaired.  Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

3.     Class 3 – Secured Claim of City and County of Denver

(a)     Classification:  Class 3 consists of the Secured Claim of the City and County of Denver against Mi Pueblo.

(b)     Treatment:  The holder of the Class 3 Allowed Secured Claim shall receive, on account of such Claim, regular installment Cash payments from Reorganized Mi Pueblo over a period not to exceed five years from the Petition Date, with a value, as of the Effective Date, equal to the allowed amount of such Claim.  Payments of this Claim shall be made monthly in each month following the Effective Date, and interest on the unpaid portion of the Claim shall accrue at the statutory rate applicable to such Claim.

(c)     Voting:  Class 3 is Impaired.  Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

4.     Class 4 – Secured Claim of State of Colorado

(a)     Classification:   Class 4 consists of the Secured Claim of the State of Colorado against Mi Pueblo.

(b)     Treatment:  The holder of the Class 4 Allowed Secured Claim shall receive, on account of such Claim, regular installment Cash payments from Reorganized Mi Pueblo over a period not to exceed five years from the Petition Date, with a value, as of the Effective Date, equal to the allowed amount of such Claim.  Payments of this Claim shall be made monthly in each month following the Effective Date, and interest on the unpaid portion of the Claim shall accrue at the statutory rate applicable to such Claim.

(c)     Voting:  Class 4 is Impaired.  Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.     Class 5 – Secured Claims Against Cuevas

(a)     Classification:  Class 5 Consists of the Secured Claims against the Cuevas, including:  (i) the Cuevas' mortgage for their personal residence (the "*Mortgage*"), located at 18142 Adriatic Place, Aurora, CO 80013 (on which the lender is JP Morgan Chase Bank, N.A.); (ii) a note held by Land Rover Financial Group for a 2011 Range Rover owned by Daneen Cueva; (iii) a note held by Security Service Federal Credit Union for a 2011 Toyota Tacoma owned by Daneen Cueva; and (iv) a note held by Wells Fargo Dealer Services for a 2008 Mercedes Benz owned by Jaime Cueva.

(b)     Treatment:   The Secured Claims against the Cuevas shall be Allowed pursuant to the terms of the loan and security documents evidencing those Claims, and shall not be subject to defense, avoidance, recharacterization, disgorgement, subordination, setoff, recoupment, or other contest, for all purposes of the Plan and the Chapter 11 Cases.  Each Holder of a Secured Claim against the Cuevas shall continue to hold its Claims after the Effective Date in accordance with the loan and security documents.  The Allowed Secured Claims against the Cuevas shall be reinstated in their entirety in accordance with section 1124 of the Bankruptcy Code, with any monetary defaults thereunder to be cured on or as soon as practicable after the Effective Date.

With respect to the vacant land located at 1950 Tower Road, Aurora, CO 80011, subject to a first lien of JP Morgan Chase Bank, N.A. the Cuevas shall attempt to sell such land, with the net proceeds (after costs of sale) to be tendered to the Lender as a partial distribution on its Class 1 Claim.  With respect to a 2013 Infiniti, subject to a first lien of Infiniti Financial Services, the vehicle shall be sold or surrendered, with the proceeds to be tendered to the lienholder in full satisfaction of its claim, and with any deficiency claim to be treated as a Class 9 Claim.

(c)     Voting:  Class 5 is Unimpaired.  Holders of Secured Claims against the Cuevas are deemed to accept the Plan.

6.     Class 6 – Convenience Claims

(a)     Classification:  Class 6 Consists of all General Unsecured Claims against Mi Pueblo totaling $1,000 or less, or reduced to $1,000 by the Holder's election on its ballot for the Plan.

(b)     Treatment:  As soon as practicable following the Effective Date, Holders of Allowed Class 6 Claims shall receive, on account of and in full satisfaction of such Claims, Cash in the amount of 100% of the Allowed amount of such Claims.

(c)     Voting: Class 6 is Impaired.  Holders of Convenience Claims are entitled to vote to accept or reject the Plan.

7.     Class 7 – 503(b)(9) Claim of Harvest Meat Company

(a)     Classification:  Class 7 consists of the Section 503(b)(9) Claim of Harvest Meat Company against Mi Pueblo, which was filed in the amount of $166,717.

(b)     Treatment:  As soon as practicable following the Effective Date, the Holder of the Allowed Class 7 Claim shall receive, on account of such Claim, Cash in the amount of $100,000.  In addition, the Holder shall receive an additional $66,717 in Cash, payable in equal monthly installments of $1,111.95 for five (5) years, with the first installment to be made on the first day of the month following the month in which the Effective Date falls.  The monthly installment payments will be made from the set aside of Available Cash, prior to Distributions to Holders of Class 7 Claims.  The Holder of the Class 7 Claim shall not receive interest on account of its Claim.

(c)     Voting:  Class 7 is Impaired.  Holders of Class 7 Claims are entitled to vote to accept or reject the Plan.

8.      Class 8 – Mi Pueblo General Unsecured Claims

(a)      Classification:  Class 8 consists of all General Unsecured Claims, other than Convenience Claims, against Mi Pueblo.

(b)      Treatment:   Following the Effective Date and payment in full of Convenience Claims, all Available Cash, net of Available Cash required to pay (i) Administrative Claims; and (ii) the Class 7 Claim, shall be set aside for Distribution to Holders of General Unsecured Claims on a Pro Rata basis.  Holders of General Unsecured Claims shall receive the foregoing Distributions until they have been paid in full, without interest.

(c)      Voting:  Class 8 is Impaired.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

9.      Class 9 – Cueva General Unsecured Claims

(a)      Classification:  Class 9 consists of all General Unsecured Claims, other than Guaranty Claims, against the Cuevas.

(b)      Treatment:  On the Effective Date, or as soon as practicable thereafter, Holders of Allowed Class 9 Claims shall receive, on account of and in full satisfaction of such Claims, Cash in the amount of 100% of the Allowed amount of such Claims from the Cuevas.

(c)      Voting:  Class 9 is Impaired.  Holders of Cueva General Unsecured Claims are entitled to vote to accept or reject the Plan.

10.      Class 10 – Guaranty Claims

(a)      Classification:  Class 10 consists of all Claims against the Cuevas on account of the Guaranties.

(b)      On the Effective Date, the Guaranties shall remain in effect until discharged pursuant to Article XI.A; provided, however, that any holders of such Guaranties shall be enjoined from commencing or continuing any judicial, administrative or other proceeding against the Cuevas to enforce the Guaranties, or to obtain possession of property of the Cuevas based upon the Guaranties, for so long as Reorganized Mi Pueblo is compliant with its repayment obligations to Holders of Class 8 Claims under this Plan.  Upon the expiration of the Term of the Plan under Article VI.G, the Guaranties shall be discharged in their entirety.

(c)      Voting:  Class 10 is Impaired.  Holders of Guaranty Claims are entitled to vote to accept or reject the Plan.

11.      Class 11 – Equity Interests

(a)      Classification:  Class 11 consists of all Equity Interests.

(b)      Treatment:  On the Effective Date, all Equity Interests in Mi Pueblo shall be retained by Jaime and Daneen Cueva as the equity of Reorganized Mi Pueblo subject to the Stock Pledge in favor of the Creditor Trust as set forth in Article VI.E. below, for purposes of providing

substantial tax savings to Reorganized Mi Pueblo. The Stock Pledge and the Confirmation Order shall require that so long as the Creditor Trust administers this Plan, the Creditor Trustee shall have the sole power to vote Mi Pueblo's Equity Interests, subject to the provisions of Article VI.E of the Plan. No distributions to Holders of Class 11 Interests shall be made for so long as the Creditor Trust administers this Plan.

       (c)    Voting: Class 11 is Impaired. Holders of Equity Interests have agreed to vote to accept the Plan.

## ARTICLE IV.
## TREATMENT OF DISPUTED CLAIMS

### A.    OBJECTIONS TO CLAIMS; PROSECUTION OF DISPUTED CLAIMS

After the Effective Date, the Creditor Trustee, acting as the Estate Representative, shall object (and shall assume control of and continue prosecuting, any outstanding objections by the Debtor) to the allowance of Disputed Claims filed with the Bankruptcy Court. All objections shall be litigated to Final Order; provided, however, that the Creditor Trustee shall have the authority and reasonable discretion to file, settle, compromise or withdraw any objections to Claims, without approval of the Bankruptcy Court. The Confirmation Order shall specifically grant the Creditor Trustee, as Estate Representative, such authority.

Objections to Disputed Claims shall be filed by no later than one hundred eighty (180) days after the Effective Date (the "*Claims Objection Deadline*"); *provided, however*, that the Creditor Trustee shall have the option to seek extensions of the Claims Objection Deadline by filing a motion with the Bankruptcy Court pursuant to Bankruptcy Rule 9006 prior to expiration of the Claims Objection Deadline. The Creditor Trustee, in consultation with Debtors, shall have reasonable discretion to decide not to review and/or object to proofs of Claim, including, without limitation, to decide not to object to claims below a certain dollar amount to the extent the Debtors believe that such review and/or objection would be uneconomical.

No Bankruptcy Court approval shall be required in order for the Creditor Trustee to settle and/or compromise any Claim, objection to Claim, cause of action, or right to payment of or against the Debtor or its Estate. Nor shall Bankruptcy Court approval be required for the Creditor Trustee to retain counsel to prosecute objections to Disputed Claims.

### B.    ESTIMATION OF CLAIMS

The Debtors, or after Confirmation, the Creditor Trustee, acting as the Estate Representative, may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Reorganized Mi Pueblo previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated shall constitute the maximum allowable amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, or after Confirmation, the Creditor Trustee,

14

may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## C.      PAYMENTS AND DISTRIBUTIONS ON DISPUTED CLAIMS

No interest shall be paid on Disputed Claims that later become Allowed Claims or with respect to any Distribution to any Holder except as specifically set forth in this Plan.  No Distribution shall be made with respect to all or any portion of any Claim, a portion of which or all of which is a Disputed Claim, pending the entire resolution thereof.

Notwithstanding the foregoing, Reorganized Mi Pueblo will set aside for each Holder of a Disputed General Unsecured Claim such amount as is necessary to provide required Distributions as if that Claim were an Allowed Claim, either based upon the amount of the Claim as provided in the Plan, the amount of the Claim as filed with the Bankruptcy Court, or the amount of the Claim as estimated by the Bankruptcy Court.

At such time as a Disputed General Unsecured Claim becomes, in whole or in part, an Allowed General Unsecured Claim, Reorganized Mi Pueblo shall distribute to the Holder thereof the distributions, if any, to which such Holder is then entitled under the Plan or the Confirmation Order.  Reorganized Mi Pueblo shall make any such Distribution, as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order.

**ARTICLE V.**
**DISTRIBUTIONS**

## A.      METHOD OF DISTRIBUTIONS TO CREDITORS

Distributions to creditors of Mi Pueblo made pursuant to the Plan shall be made by Reorganized Mi Pueblo from the Distribution Account at the direction of the Creditor Trustee, and distributions to creditors of the Cuevas shall be made by the Cuevas from their accounts, consistent with the provisions of this Plan.  Subject to the general requirements of the Plan and the treatment of the various Classes of Claims hereunder, the timing of individual Distributions to creditors of Mi Pueblo shall be determined by the Creditor Trustee, in his or her sole and complete discretion, after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to make Pro Rata Distribution on account of applicable Disputed Claims.  The Creditor Trustee, in determining the timing of Distributions, may also consider, among other things, the costs associated with making Distributions to ensure that the issuance of Distributions is efficient, provided, however, that when the amount of distributable funds in the Distribution Account exceeds $100,000, the Creditor Trustee will generally take steps to make a distribution reasonably promptly (and may make distributions more frequently in his discretion).

Withdrawals and Distributions from the Distribution Account shall require the approval of the Creditor Trustee.  Funds in the Distribution Account may not be used for purposes other than Distributions, *provided*, *however*, that if the Creditor Trustee determines that (a) funds in the Distribution Account are urgently needed for corporate purposes of Reorganized Mi Pueblo (such

15

as to prevent a short-term cash flow crisis or to take advantage of an opportunity to expedite Distributions in the aggregate) and (b) that using such funds for corporate purposes of Reorganized Mi Pueblo will expedite or make further Distributions more likely, the Creditor Trustee may, but shall not be obligated to, allow Reorganized Mi Pueblo to borrow funds from the Distribution Account on a short-term basis and on terms acceptable to the Creditor Trustee in its business judgment.  Pending Distribution, the Creditor Trustee shall have the right, but not the obligation, to have funds in the Distribution Account invested, but only in the same manner that it would be allowed to invest funds of the Creditor Trust per the Creditor Trust Agreement.

**B.**     **MEANS OF CASH PAYMENT**

Cash payments made pursuant to the Plan shall be in U.S. dollars and, at the option and in the sole discretion of the Creditor Trustee, be made by (a) checks drawn on or (b) wire transfers from a domestic bank acceptable to the Creditor Trustee.

**C.**     **DELIVERY OF DISTRIBUTIONS**

Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, Distributions and deliveries to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by the address set forth on timely filed proof(s) of Claim or some other writing filed with the Bankruptcy Court and served upon the Creditor Trustee and Reorganized Mi Pueblo (the "*Distribution Address*").

**D.**     **UNDELIVERABLE DISTRIBUTIONS**

1.     Holding of Undeliverable Distributions

If any Distribution to any Holder of an Allowed Claim is returned to Reorganized Mi Pueblo as undeliverable, no further Distributions shall be made to such Holder unless and until the Creditor Trustee Reorganized Mi Pueblo is notified by such Holder, in writing, of such Holder's then-current address.  Upon such an occurrence, the appropriate Distribution shall be made as soon as reasonably practicable after such Distribution has become deliverable.  All Entities ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind.  Nothing contained in the Plan shall require the Creditor Trustee or Reorganized Mi Pueblo to attempt to locate any Holder of an Allowed Claim.

2.     Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed Distribution that does not provide notice of such Holder's correct address to the Creditor Trustee within sixty (60) days after the date of the applicable Distribution made by Reorganized Mi Pueblo to such Holder, shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution (if such Holder subsequently notifies the Creditor Trustee Reorganized Mi Pueblo of its then-current address, it will only be entitled to a Pro Rata Share of remaining future Distributions, if any).  Any unclaimed Distributions that are forfeited pursuant to this provision will be returned to the Distribution Account for re-Distribution in accordance with the Plan.

16

E.  **COMPLETION OF DISTRIBUTIONS**

Upon the Creditor Trustee determining that all Distributions required under the Plan have been completed, any remaining funds in the Distribution Account will be returned to Reorganized Mi Pueblo.

F.  **WITHHOLDING AND REPORTING REQUIREMENTS**

In making Distributions hereunder, Reorganized Mi Pueblo shall comply with all tax withholding and reporting requirements imposed by any U.S. federal, state or local or non-U.S. taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Creditor Trustee and/or Reorganized Mi Pueblo shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution, and (b) the Creditor Trustee reserves the option, in his discretion, to not have Reorganized Mi Pueblo make a Distribution to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Creditor Trustee for the payment and satisfaction of such tax obligations or has, to the Creditor Trustee's satisfaction, established an exemption therefrom.

Any Distributions to be made pursuant to the Plan shall, pending the implementation of such withholding and reporting requirements, be treated as undeliverable pursuant to Article V.D of the Plan. For the avoidance of doubt, and not to in any way limit the Creditor Trustee's discretion over Distributions, the Creditor Trustee may withhold from amounts distributable to any entity any and all amounts, determined in the Creditor Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive, or other government equivalent of the United States or of any political subdivision thereof.

Any and all distributions of Creditor Trust Assets shall comply with all applicable laws and regulations, including, but not limited to, applicable federal and state tax and securities laws.

G.  **TAX IDENTIFICATION NUMBERS**

Prior to making Distributions hereunder, Reorganized Mi Pueblo shall require all Holders to furnish to the Creditor Trustee its Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service. Forms allowing Holders to provide this information will be mailed to the Distribution Address for each Holder prior to Distributions being made, and Holders shall have forty five (45) days from the date of mailing to return the executed forms. Any Holder that fails to return the executed forms within such forty five (45) day period shall be deemed to have forfeited its right to receive Distributions and shall be forever barred and enjoined from asserting any right to Distributions made prior to Reorganized Mi Pueblo receiving its executed form, with such Holders only entitled to a Pro Rata Share of remaining future Distributions, if any. Any Distributions that are forfeited pursuant to this provision will be returned to the Distribution Account for re-Distribution in accordance with the Plan.

17

**H.   TIME BAR TO CASH PAYMENTS**

Checks issued by Reorganized Mi Pueblo on account of Allowed Claims shall be null and void if not negotiated within forty-five (45) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Creditor Trustee by the Holder of the Allowed Claim. Any claim relating to such voided check shall be made on or before sixty (60) days after the date of issuance of such check, and if no such request is timely submitted, the Holder at issue shall be deemed to have forfeited its Claim for such Distribution and shall be forever barred and enjoined from asserting any right to such Distribution. Any Distributions that are forfeited pursuant to this provision will be returned to the Distribution Account for re-Distribution in accordance with the Plan.

**I.   INTEREST**

Unless otherwise required by applicable bankruptcy law, or specifically provided for herein, post-petition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

**J.   FRACTIONAL DOLLARS; DE MINIMIS DISTRIBUTIONS**

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. The Creditor Trustee will not direct any payment of less than twenty dollars ($20.00) on account of any Allowed Claim, unless a specific request therefor is made in writing to the Creditor Trustee within sixty (60) days of the Effective Date.

**K.   SET-OFFS**

Consistent with applicable law, the Creditor Trustee may, but shall not be required to, set-off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that the Creditor Trustee, the Debtors, their Estates, or Reorganized Mi Pueblo may hold against the Holder of such Allowed Claim; *provided*, *however*, that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Creditor Trustee, the Debtors, their Estates, or Reorganized Mi Pueblo of any such claims, rights and Causes of Action that the Creditor Trustee, the Debtors, their Estates, or Reorganized Mi Pueblo may possess against such Holder.

**L.   SETTLEMENT OF CLAIMS AND CONTROVERSIES**

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim with respect thereto, or any distribution to be made on account of such an Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies, and the Bankruptcy Court's finding that such

compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and is fair, equitable and reasonable.

## ARTICLE VI.
## IMPLEMENTATION OF THE PLAN

### A.    CORPORATE ACTION

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving the corporate structure of Mi Pueblo shall be deemed authorized and approved without any requirement of further action by Mi Pueblo or Mi Pueblo's shareholders.

Upon entry of the Confirmation Order, Reorganized Mi Pueblo is also authorized, without the need for any or further order of the Bankruptcy Court, to take any and all actions reasonably necessary to effectuate the Plan.

### B.    POST-CONFIRMATION MANAGEMENT

The initial CEO of Reorganized Mi Pueblo shall be the current CEO, Jaime Cueva.  He shall be paid $105,000.00 per annum initially, and will be entitled to annual raises not to exceed three percent (3%), which raises shall be awarded at the discretion of the Creditor Trustee for so long as the Creditor Trust is in place.  Daneen Cueva shall continue to serve as the Vice President of Reorganized Mi Pueblo, and shall also receive a salary of $105,000 per annum initially, and will be entitled to annual raises not to exceed three percent (3%), which raises shall be awarded at the discretion of the Creditor Trustee for so long as the Creditor Trust is in place.

The Creditor Trustee, in its discretion, may terminate the employment of either Jaime or Daneen Cueva "for cause" on no less than sixty (60) days' written notice.  Cause, for purposes of this section, shall constitute the following (each, a "*Termination Event*," and collectively, "*Termination Events*"):

- Breaches of fiduciary duty;

- Fraud or the making of fraudulent transfers;

- Misappropriation or theft of corporate opportunities of Reorganized Mi Pueblo;

- Commission of criminal activity, other than misdemeanor offenses wholly unrelated to the Debtor or its business, or simple traffic violations;

- Misappropriation of Reorganized Mi Pueblo's assets for the benefit of a member of the Cueva family or any individual or entity having an affiliation or relationship with the Cuevas; and

- Repeated (defined as two or more consecutive fiscal quarters, or two non-consecutive quarters in a fiscal year) failure to generate sufficient Available Cash to make Distributions to Holders of Class 7 and 8 Claims in the aggregate amount of not less than $150,000.

19

In the event that the Creditor Trustee terminates the employment of either Jaime or Daneen Cueva for cause, Jaime or Daneen Cueva may challenge such termination by the filing of a motion with the Bankruptcy Court within ten (10) days of the effective date of termination.

In the event that the Creditor Trustee terminates the employment of either Jaime or Daneen Cueva, and either (i) no timely challenge is made to such termination or (ii) the Bankruptcy Court denies a timely-made challenge, the terminated Insider shall be deemed to have surrendered his or her Equity Interests in Reorganized Mi Pueblo to the Creditor Trustee.

Notwithstanding anything to the contrary in Mi Pueblo's governing documents, during the Term of the Plan the CEO will manage Reorganized Mi Pueblo's day-to-day operations and will report to the Creditor Trustee.

Promptly following Confirmation, Reorganized Mi Pueblo will purchase director and officer liability insurance reasonably satisfactory to the Creditor Trustee.  Reorganized Mi Pueblo shall also obtain, at its expense, a bond on the Creditor Trustee's performance.

## C.   CANCELLATION OF NOTES, INSTRUMENTS, DEBENTURES AND EQUITY INTERESTS

On the Effective Date, except to the extent provided otherwise in the Plan, the Bank Debt, and all notes, instruments, debentures, certificates and other documents evidencing the Lender Secured Claims, shall be deemed canceled, terminated, and surrendered (regardless of whether such notes, instruments, debentures, certificates or other documents are in fact surrendered for cancellation to the appropriate indenture trustee or other such Person).

## D.   FUTURE EQUITY DISPOSITION

Upon the Effective Date, the Equity Interests in Mi Pueblo shall become the Equity Interests in Reorganized Mi Pueblo and shall remain titled in Jaime and Daneen Cueva, although subject to the Stock Pledge in favor of the Creditor Trust and the sole right of the Creditor Trustee thereunder to vote the Equity Interests throughout the Term of the Plan.

## E.   STOCK PLEDGE

On the Effective Date, Jaime and Daneen Cueva shall grant to the Creditor Trust the Stock Pledge pledging their Equity Interests and granting a collateral assignment to the Creditor Trust throughout the Term of the Plan to secure the obligations of Reorganized Mi Pueblo under the Plan.  The Stock Pledge shall expressly state that the Equity Interests of Reorganized Mi Pueblo will be subject to voting rights solely vested in the Creditor Trustee through the Term of the Plan; however, nothing in the Stock Pledge shall entitle the Creditor Trustee to exercise the voting rights in any manner inconsistent with the provisions of Article VI.D.  Approval of the Stock Pledge and its essential provisions shall be expressly included in the Confirmation Order.

## F.   PROSECUTION AND TOLLING OF CAUSES OF ACTION

The Creditor Trustee shall have sole authority to pursue (as Estate Representative) Causes of Action preserved hereunder (including, without limitation, to retain counsel to pursue same), which other than as set forth herein shall not require Bankruptcy Court approval, to settle such

Causes of Action, or to otherwise administer such Causes of Action as he deems appropriate with the ultimate objective of maximizing Available Proceeds.  Notwithstanding the foregoing, the Creditor Trustee shall hold all Avoidance Actions against non-Insiders in abeyance, and shall endeavor to obtain tolling agreements with each potential defendant, with such actions to be released upon full payment to Holders of Class 7 and 8 Claims under this Plan.  Should the Creditor Trustee determine that Holders of Class 7 and 8 Claims will not be paid in full due to the inability of Reorganized Mi Pueblo to generate Available Cash necessary to make Distributions, it may, in its sole discretion, file and prosecute all such tolled avoidance actions.

The Creditor Trustee shall also hold in abeyance any Causes of Action that may be brought against Jaime and Daneen Cueva, and Jaime and Daneen Cueva shall execute a tolling agreement with respect to such Causes of Action as a condition precedent to the Effective Date of the Plan.  In the event that either Jaime or Daneen Cueva is terminated for cause pursuant to Article VI.B of this Plan, the Creditor Trustee may, in its sole discretion, terminate the tolling agreement and prosecute the Causes of Action against the terminated Insider.  Upon payment in full to all Holders of Claims against Mi Pueblo, all Causes of Action against Jaime and Daneen Cueva shall be waived and released in their entirety.

The Committee, prior to Confirmation, and the Creditor Trustee, following the Effective Date, shall undertake an investigation of potential Causes of Action against Jaime and Daneen Cueva, and the Cuevas shall cooperate in good faith with such investigation.  To the extent that the Committee or the Creditor Trustee determines that no viable Causes of Action exist against the Cuevas, or that such Causes of Action are unlikely to result in a material recover to the Estates, the Committee or the Creditor Trustee may, in their discretion, agree to enter into a mutual release with the Cuevas.

## G.      TERM OF THE PLAN

The term of this Plan (the "*Term of the Plan*") shall continue until the earlier of the following:

(i)      all Allowed Claims have been paid in full pursuant to the provisions of the Plan;

(ii)      the Creditor Trustee has conducted a sale or liquidation of substantially all of the assets of Reorganized Mi Pueblo pursuant to Article VI.I of the Plan, and the proceeds of such sale or liquidation have been distributed to the Holders of Allowed Claims pursuant to the provisions of this Plan, including all Allowed Class 7 and 8 Claims (without interest), with any excess proceeds in the Distribution Account being transferred to Reorganized Mi Pueblo; or

(iii)      eighty-four (84) months following the Effective Date.

## H.      OPTION RIGHTS OF THE CUEVAS TO RETAIN EQUITY INTERESTS UNDER SPECIFIC CONDITIONS

Pursuant to the provisions of the Stock Pledge, if and when all of the Allowed Claims have been paid in full, the Creditor Trustee shall release the Stock Pledge and Jaime and Daneen Cueva

shall be re-vested with full ownership of their Equity Interests free and clear of any and all liens and restrictions previously imposed by the Stock Pledge.

In addition, Jaime and Daneen Cueva also may acquire the right to have the Stock Pledge released upon an offer to purchase Mi Pueblo's assets for a price equal to the remaining balance owed on all outstanding Allowed Claims under the Plan plus the costs of administering such final Distributions and winding up the Creditor Trust. Such offer shall be accepted if adequately financed and performable within a reasonable time under the circumstances.

**I.     SALE OF REORGANIZED MI PUEBLO; DISTRIBUTIONS OF SALE PROCEEDS**

In the event that a Termination Event occurs, and is either (i) uncured by the Debtors within sixty (60) days of receipt of a written notice of Termination Event by the Creditor Trustee; or (ii) unsuccessfully challenged by the Cuevas in the Bankruptcy Court, the Creditor Trustee may, in its reasonable discretion, elect to sell either the Equity Interests or the assets of Reorganized Mi Pueblo by either a private sale or through a public auction process. In the event that the Creditor Trustee elects to sell the Equity Interests or assets, he shall provide at least thirty (30) days' written notice to the Cuevas, who shall be permitted to make a cash offer for the Equity Interests or the assets, provided that such cash offer is sufficient to pay all Allowed Claims, as well as wind-down expenses of the Creditor Trust, in full.

The proceeds of any sale or liquidation of the Equity Interests or assets of Reorganized Mi Pueblo shall be distributed to Creditors pursuant to provisions and priorities of this Plan. That means, for the sake of illustration, any proceeds from a liquidation or sale would be applied to the payment of Holders of Class 1 Claims first in the event of a sale or liquidation. Moreover, notwithstanding anything to the contrary in the Plan, in the event of a sale or liquidation, assuming Holders of Claims in Classes 1-4 have been previously paid in full, all funds would be used to satisfy Holders of Claims in Class 7, followed by Class 8.

**J.     INSURANCE PRESERVATION**

Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other Entity.

**K.     OPPORTUNITY TO SUBMIT COMPETING BIDS PRIOR TO CONFIRMATION**

Any Person shall have the opportunity to submit competing bids for the Equity Interests or substantially all assets of Mi Pueblo. Any such competing bids must be all-cash offers, and the bidder must be prepared to close on any proposed transaction within thirty (30) days of the date of the Confirmation Hearing on the Plan. A competing bid will not be considered unless the following requirements are met: (i) the bid is in writing; (ii) includes evidence of the financial wherewithal of the bidder to timely close the transaction; (iii) contains all necessary corporate authorizations of the bidder; (iv) provides for the full payment of all Classes of Creditors of Mi Pueblo on materially more favorable terms than as set forth in the Plan; and (v) is submitted to counsel to Mi Pueblo and counsel to the Committee by no later than five (5) days prior to the Confirmation Hearing. To the extent that one or more bids meeting the foregoing requirements is received, Mi Pueblo and the Committee will either (i) present the bid for approval by the Court in lieu of confirmation of the Plan; or (ii) will request that an auction for the Equity Interests or Mi Pueblo's assets will be conducted at the Confirmation Hearing.

## ARTICLE VII.
## CREDITOR TRUST

1.      On the Effective Date, Reorganized Mi Pueblo shall execute and deliver the Creditor Trust Agreement creating the Creditor Trust.  The Creditor Trust Agreement shall be filed with the Bankruptcy Court in advance of the Confirmation Hearing.  The Creditor Trust will be the beneficiary of the Stock Pledge.  The Creditor Trustee shall be deemed to be appointed a representative of the Estate of Reorganized Mi Pueblo within the meaning of section 1123(b)(3)(B) of the Bankruptcy Code.

2.      The Creditor Trust shall terminate automatically, without further order of the Bankruptcy Court, once the Creditor Trustee has either (a) fully administered his obligations under the Creditor Trust and the Plan and has filed a notice of such fact with the Bankruptcy Court or (b) filed a notice with the Bankruptcy Court terminating the Creditor Trust if continued administration has become uneconomical in the Creditor Trustee's reasonable business judgment.

3.      The initial Creditor Trustee shall be [NAME], and will be compensated on an hourly basis as set forth in the Creditor Trust Agreement.  [NAME] may be replaced as provided for in the Creditor Trust Agreement.

4.      Creditor Trust Expenses shall be paid by Reorganized Mi Pueblo in the ordinary course of business and without the need for Bankruptcy Court approval upon presentation by the Creditor Trustee of an invoice or invoices detailing such Creditor Trust Expenses.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any executory contracts or unexpired leases which have not (i) expired by their own terms on or prior to the Effective Date; or (ii) been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court, shall be deemed rejected by Mi Pueblo as of the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of such executory contracts and unexpired leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any party affected by Article VIII of the Plan shall file a proof of claim by the Rejection Claims Bar Date in order for its Claim to be considered.

## ARTICLE IX.
## PRESERVATION OF RIGHTS

Under the Plan, all rights of the Debtors to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Debtors' Chapter 11 Cases), shall expressly be preserved and shall be deemed transferred to the applicable Debtor on the Effective Date, other than any Causes of Action against the Released Parties, and all other parties released by the Debtor under Article XI.F(1) or XI.F(3) of the Plan.

Subject to the releases and exculpation provisions herein, potential Causes of Action which may be pursued after the Effective Date, also include, without limitation any other Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtor's businesses or operations, including, without limitation, the following: possible claims

23

against vendors, landlords, sublessees, assignees, customers or suppliers for warranty, indemnity, back charge/set-off issues, overpayment or duplicate payment issues and collections/accounts receivables matters; deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, landlord, sublessee, assignee, or other Entity; employee, management or operational matters; claims against landlords, sublessees and assignees arising from the various leases, subleases and assignment agreement relating thereto, including, without limitation, claims for overcharges relating to taxes, common area maintenance and other similar charges; financial reporting; environmental, and product liability matters; actions against insurance carriers relating to coverage, indemnity or other matters; counterclaims and defenses relating to any Claims or other obligations; contract or tort claims which may exist or subsequently arise; and any and all Avoidance Actions pursuant to any applicable section of the Bankruptcy Code arising from any transaction involving or concerning the Debtor.

Mi Pueblo shall also preserve any and all potential Insider Claims, which Insider Claims shall be deemed transferred to Reorganized Mi Pueblo on the Effective Date and may be pursued by the Creditor Trustee, as Estate Representative, in the Creditor Trustee's discretion in accordance with Article VI.F of the Plan.

In addition, there may be numerous other Causes of Action which currently exist or may subsequently arise that are not set forth herein or in the Disclosure Statement because the facts upon which such Causes of Action are based are not currently or fully known by the Debtors and, as a result, cannot be raised during the pendency of the Chapter 11 Cases. The failure to list any such unknown Cause of Action herein or in the Disclosure Statement is not intended to limit the right of the Creditor Trustee and/or the Debtors to pursue any unknown Cause of Action to the extent the facts underlying such unknown Cause of Action subsequently become fully known to the Debtors or the Creditor Trustee.

The Debtors do not intend, and it should not be assumed that because any existing or potential Causes of Action have not yet been pursued by the Debtors or are not set forth herein, that any such Causes of Action have been waived.

Unless Causes of Action against an Entity are expressly waived, relinquished, released pursuant to the Releases in Article XI.F, compromised or settled in the Plan, or any Final Order, the Debtors and the Creditor Trustee expressly reserve all Causes of Action, known or unknown, for later adjudication and therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the Confirmation or Consummation of the Plan.

Except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, any claims, rights, and Causes of Action that the Debtors may hold against any Entity shall vest in the Cuevas or Reorganized Mi Pueblo, as applicable, and the Creditor Trustee, as Estate Representative, shall retain and may enforce any and all such claims, rights, or Causes of Action, as appropriate, in his reasonable discretion. The Creditor Trustee, as Estate Representative, shall have the right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and Causes of Action without the

consent or approval of any third party and without any further order of the Bankruptcy Court or any other court.

## ARTICLE X.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE

**A.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN**

The occurrence of the Effective Date and the Consummation of the Plan are subject to satisfaction of the following conditions precedent:

1.    Confirmation Order and Authorization.  The Confirmation Order as entered by the Bankruptcy Court shall be a Final Order in full force and effect, in form and substance reasonably satisfactory to the Debtors and the Committee, and the Debtors shall be authorized to take all actions necessary or appropriate to enter into, implement and consummate the Plan and other agreements or documents created in connection with the Plan.

2.    Execution of Documents; Other Actions.  All actions (including the issuance of the New Note and the New Security Agreement, the execution of the Creditor Trust Agreement, the Stock Pledge, the tolling agreement with the Cuevas, and the execution of all other documents and agreements necessary to implement the Plan) shall have been executed and effectuated.

3.    Effective Date Payments.  Any and all payments required hereunder to be made prior to the Effective Date having been made.

The Proponents may waive any of the conditions precedent to the occurrence of the Effective Date by filing a notice of waiver setting forth the terms of the waiver.

**B.    THE CONFIRMATION ORDER**

The Confirmation Order shall not be stayed and shall be effective immediately upon entry. If the Confirmation Order is vacated for whatever reason, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in the Debtor; (ii) prejudice in any manner the rights of the Debtor; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtor.

## ARTICLE XI.
## EFFECT OF PLAN CONFIRMATION

**A.    DISCHARGE**

Reorganized Mi Pueblo shall receive a discharge of its debts in accordance with section 1141(d)(1) of the Bankruptcy Code as of the Effective Date, subject to the provisions of the Plan. The Cuevas shall receive a discharge of their debts upon the expiration of the Term of the Plan under Article VI.G or as otherwise in accordance with section 1141(d)(5) of the Bankruptcy Code. Nothing herein shall be construed to prohibit the Cuevas from requesting that the Court convert

25

their individual bankruptcy cases, under section 1112(a) of the Bankruptcy Code, to Chapter 7 cases at any time before their discharge.

## B.      TERMINATION OF SUBORDINATION RIGHTS AND SETTLEMENT OF RELATED CLAIMS

The classification and manner of satisfying all Claims and Equity Interests and the respective Distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. **The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons from enforcing or attempting to enforce any such contractual, legal and equitable subordination rights satisfied, compromised and settled in this manner.**

## C.      INJUNCTION

1.      **Except as otherwise expressly provided in the Plan, all Parties that receive Distributions under the Plan and that have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtors, their Estates, Reorganized Mi Pueblo, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date: (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (iv) asserting any defense or right of setoff, subrogation or recoupment of any kind against any obligation, debt or liability due to the Debtors.**

2.      **By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth herein.**

## D.      TERMS OF EXISTING INJUNCTIONS OR STAYS

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until Reorganized Mi Pueblo has made all Distributions required under the Plan and the Chapter 11 Cases have been closed. The Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any Claims, Equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan.

## E.      EXCULPATION

Subject to section 1125(e) of the Bankruptcy Code, neither the Debtors, their Estates, Reorganized Mi Pueblo nor any of their respective present or former officers, directors,

shareholders, employees, advisors, attorneys or agents acting in such capacity or their respective affiliates, shall have or incur any liability to, or be subject to any right of action by, the Debtors or any Holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective agents, shareholders, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, (a) any act taken or omitted to be taken on or after or in preparation for the Petition Date, (b) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan, (c) the solicitation of acceptances and rejections of the Plan, (d) the releases or the solicitation thereof, (e) the Chapter 11 Cases, (f) the administration of the Plan, (g) the Distribution of property under the Plan, (h) any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Cases, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## F.   RELEASES

1.   **Releases by the Debtors. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors in their individual capacities and as debtors in possession, shall forever release, waive and discharge all claims, obligations, suits, judgments, demands, debts, rights, causes of action and liabilities, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to (i) the Debtors; (ii) the parties released pursuant to the releases; (iii) any act taken or omitted to be taken on or after the Petition Date; (iv) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan; (v) the solicitation of acceptances and rejections of the Plan; (vi) the solicitation of the releases; (vii) the Chapter 11 Cases; (viii) the administration of the Plan; (ix) the property to be distributed under the Plan; or (x) any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Cases, against (a) the current and former directors, officers and employees (in their capacities as such) of the Debtors; (b) the Debtors' agents and Professionals and the Committee's agents and Professionals; (c) each Holder of a Claim that votes to accept the Plan; and (d) Reorganized Mi Pueblo. Nothing herein shall operate as a release of the obligation of any insurance company of the Debtor to provide coverage in accordance with the terms of such policies.  The foregoing release shall not include a release of the Insider Claims, which are subject to the provisions of Article VI.F.**

2.   **Releases by Holders of Claims and Interests. As of the Effective Date, in exchange for accepting consideration pursuant to the Plan, all Holders of Claims that vote to accept the Plan, and the current and former directors, officers and employees of the Debtors (in their capacity as such) shall forever release, waive and discharge all Claims, obligations, suits, judgments, demands, debts, rights, causes of action and liabilities (other than the right to enforce the Debtors' obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place**

27

on or prior to the Effective Date in any way relating to (i) the Debtors; (ii) the parties released pursuant to the releases; (iii) any act taken or omitted to be taken on or after the Petition Date; (iv) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan; (v) the solicitation of acceptances and rejections of the Plan; (vi) the solicitation of the releases; (vii) the Chapter 11 Cases; (viii) the administration of the Plan; (ix) the property to be distributed under the Plan; or (x) any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Cases, against each of (a) the current and former directors, officers and employees (in their capacities as such) of the Debtors; (b) the Debtors' agents and Professionals and the Committee's agents and Professionals; (c) each Holder of a Claim that votes to accept the Plan; and (d) Reorganized Mi Pueblo. Nothing herein shall operate as a release of the obligation of any insurance company of the Debtor to provide coverage in accordance with the terms of such policies.

3. **Release of Jaime and Daneen Cueva.** Notwithstanding anything set forth in this Article X to the contrary, all Claims and Causes of Action of the Debtors or their Estates against Jaime and Daneen Cueva (i.e., the Insider Claims) will be released in accordance with Article VI.F of this Plan.

## ARTICLE XII.
## MISCELLANEOUS

A. **PAYMENT OF STATUTORY FEES**

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing or as may accrue thereafter prior to the entry of the Final Decree, shall be paid by the Debtors to the extent required by applicable law. The Debtors, the Creditor Trustee and Reorganized Mi Pueblo shall comply with payment and reporting requirements to the United States Trustee pursuant to 28 U.S.C. § 1930.

B. **BUSINESS DAY**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

C. **SEVERABILITY**

The provisions of this Plan shall not be severable unless such severance is agreed to by the Proponents and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

D. **CONFLICTS**

To the extent that any provision of the Disclosure Statement, or any exhibits or schedules thereto, conflict with or are in any way inconsistent with the terms of the Plan, the Plan shall govern and control.

**E.**    **FURTHER ASSURANCES**

The Debtors, Reorganized Mi Pueblo, all Holders of Claims receiving Distributions under the Plan, and all other parties in interest shall, from time to time, prepare, execute and deliver agreements or documents and take other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**F.**    **NOTICES**

All notices, requests, and demands required by the Plan or otherwise, to be effective, shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to all of the following, or in the case of notice by facsimile transmission, when received by all of the following, addressed as follows or to such other addresses as filed with the Bankruptcy Court:

| **To Mi Pueblo:** | **To the Cuevas:** |
|---|---|
| Mi Pueblo Latin Market, Inc.<br>Jaime Cueva<br>15421 E. Batavia Drive<br>Aurora, Colorado 80011 | Padilla & Padilla, PLLC<br>Attn:  Joaquin G. Padilla<br>1753 Lafayette Street<br>Denver, Colorado 80218<br>(303) 832-7145 (main)<br>(303) 832-7147 (facsimile)<br>Joaquin@padillalawoffices.com |
| **To Committee Counsel:**<br><br>Goldstein & McClintock LLLP<br>Attn:  Thomas R. Fawkes<br>208 South LaSalle, Suite 1750<br>Chicago, Illinois 60604<br>(312) 337-7700 (telephone)<br>(312) 277-2305 (facsimile)<br>tomf@goldmclaw.com | **To the Creditor Trustee:** |

**G.**    **FILING OF ADDITIONAL DOCUMENTS**

On or before the Effective Date, the Debtors and the Committee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**H.**    **SUCCESSORS AND ASSIGNS**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**I.      CLOSING OF CASES**

The Chapter 11 Cases shall remain open until substantial consummation, as that term is defined in section 1101 of the Bankruptcy Code, has occurred.  Once the foregoing has occurred, the Debtors will comply with all statutory provisions of the Bankruptcy Code and the Bankruptcy Rules in order to close their cases.

**J.      SECTION HEADINGS**

The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**K.      FURTHER INFORMATION**

Parties in interest should consult the accompanying Disclosure Statement for further information regarding the Debtors.

**ARTICLE XIII.**
**RETENTION OF JURISDICTION**

The Plan provides that following the Confirmation Date and until such time as all payments and Distributions required to be made and all other obligations required to be performed under the Plan have been made and performed by the Debtors initiated in the Bankruptcy Court are resolved, the Bankruptcy Court shall retain sole jurisdiction to the full extent that retention thereof is legally permissible, including, without limitation, for the following purposes:

1.      to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

2.      to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtors after the Effective Date; provided, however, that the Debtors shall reserve the right to commence collection actions, actions to recover receivables and other similar actions in all appropriate jurisdictions;

3.      to hear and determine any timely objections to Administrative Expense Claims and Priority Claims or to proofs of Claim and Equity Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Equity Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

4.      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

5.      to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

30

6.      to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

7.      to hear and determine all disputes or other matters relating to the assumption or rejection of executory contracts and unexpired leases, including issues pertaining to whether the non-debtor party's interest in any deposit to secure the contractual obligations of the Debtors post-assumption is adequately protected;

8.      to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date, and to consider requests for the employments of professionals by the Creditor Trustee to the limited extent required hereunder (in connection with preference actions);

9.      to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan, or the extent of any Entity's obligations incurred in connection with or released or exculpated under the Plan;

10.     to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

11.     to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement to be executed in connection with the Plan;

12.     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

13.     to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code;

14.     to hear any motion to extend the time within which the Debtors must make Distributions after the Effective Date; and

15.     to enter a Final Decree closing the Chapter 11 Cases.

### ARTICLE XIV.
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      <u>**MODIFICATION OF PLAN**</u>

The Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, in their discretion, to amend or modify the Plan at any time prior to the entry of the Confirmation Order.  Upon entry of the Confirmation Order, the Proponents may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A Holder of a

31

Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder and the votes of each Class for or against the Plan shall be counted and used in connection with the modified plan of reorganization.

**B.**     **REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION**

The Proponents (or any one thereof) reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Proponents revokes or withdraws the Plan, or if the Confirmation Order confirming the Plan shall not be entered or become a Final Order, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors, (2) prejudice in any manner the rights of the Debtors, (3) constitute an admission of any sort by the Debtors, or (4) constitute a release of any Causes of Action possessed or maintained by the Debtors.

Dated:  October 7, 2015                    Respectfully submitted,

**MI PUEBLO LATIN MARKET, INC.**

By:   /s/ Jaime Antonio Cueva
Name:  Jaime Antonio Cueva
Title: Chief Executive Officer

By:   /s/ Robert Padjen
Name:  Robert Padjen

**LAUFER AND PADJEN LLC**
Robert Padjen (#14678)
5290 DTC Parkway, Suite 150
Englewood, Colorado 80111
(303) 830-3173 (main)
(303) 850-7115 (facsimile)
rp@jlrplaw.com

*Counsel to Mi Pueblo Latin Market, Inc.*

**JAIME ANTONIO CUEVA**

By:    /s/ Jamie Antonio Cueva
Name:  Jaime Antonio Cueva

**DANEEN JANETTE CUEVA**

By:    /s/ Daneen Janette Cueva
Name:  Daneen Janette Cueva

By:    /s/ Joaquin G. Padilla
Name:  Joaquin G. Padilla

**PADILLA & PADILLA, PLLC**
Joaquin G. Padilla
1753 Lafayette Street
Denver, Colorado 80218
(303) 832-7145 (main)
(303) 832-7147 (facsimile)
Joaquin@padillalawoffices.com

*Counsel to Jaime Antonio Cueva and Daneen
Janette Cueva*

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:  /s/ Alison Vaughan Terry
Name:  Alison Vaughan Terry
Its:  Chairperson

By:  /s/ Thomas R. Fawkes
Name:  Thomas R. Fawkes

**GOLDSTEIN & MCCLINTOCK LLLP**
Thomas R. Fawkes
Brian J. Jackiw
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
(312) 337-7700 (main)
(312) 277-2305 (facsimile)
tomf@goldmclaw.com
brianj@goldmclaw.com

*Counsel to the Official Committee of Unsecured Creditors*